**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| **NATHAN DAVIS,** ) | |
|     **Petitioner,** ) | |
| ) | |
| **v.** ) | **No. 1:23–cv–1754 (PTG/JFA)** |
| ) | |
| **CHADICK S. DOTSON,** ) | |
|     **Respondent.** ) | |

**MEMORANDUM OPINION**

Nathan Davis, ("Petitioner" or "Mr. Davis"), a Virginia inmate proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. Davis is attacking his January 19, 2007 convictions in the Circuit Court of Arlington County, Virginia for possession with intent to distribute cocaine, possession of a firearm while in possession of cocaine, and felony child abuse. (Dkt. 1).[1] On March 11, 2024, Respondent filed his Rule 5 Answer and a Motion to Dismiss, with a supporting brief and exhibits. (Dkts. 10–11). Mr. Davis filed a response in opposition. (Dkt. 15). Accordingly, this matter is now ripe for disposition.[2] For the reasons that follow, Respondent's Motion to Dismiss must be granted and the petition will be dismissed with prejudice.

**I.      Procedural History**

Mr. Davis is detained pursuant to a final judgment of the Circuit Court of Arlington County entered on January 19, 2007. Following a two–day jury trial, he was convicted of possession with

---

[1]  In a separate jury trial, Mr. Davis was convicted of possession of a firearm by a convicted felon. He is not challenging that conviction in this proceeding. (Dkt. 1 ¶ 5).

[2]  Mr. Davis filed a motion to expand the record to include his memorandum and the attachments thereto. (Dkt. No. 3). Those matters are part of the record and have been reviewed by the Court. Accordingly, the motion will be denied as moot.

intent to distribute, possession of a firearm while in possession of cocaine, and child endangerment. The trial court sentenced Mr. Davis to a total of ten years and 30 days incarceration with four years suspended. (Case Nos. CR06–970, –971, –972).

Mr. Davis, by counsel, filed a petition for appeal in the Virginia Court of Appeals that raised two assertions of error. First, Mr. Davis contended that the trial court erred in denying his motion to suppress: (i) the evidence seized during the search of his car and person, which he alleged violated his Fourth Amendment rights; and (ii) his subsequent in–custody statements as fruit of the earlier Fourth Amendment violations. (Dkt. 17–1 at 1). The second assertion of error alleged the evidence was insufficient to sustain his conviction for child endangerment. (*Id.* at 7). The court summarized the relevant evidence as follows:

> [T]he evidence established that around 1:30 a.m. to 2:00 a.m., on June 14, 2006, plainclothes officer Matthew Owens was working with other officers assigned to a particular area of Arlington County where there had been numerous reports of stolen cars. The reports of stolen cars numbered approximately forty in a thirty-day period. The cars reported stolen included Fords, Jeeps, Toyotas, and Hondas, and the officers were specifically looking for persons driving such stolen cars.
>
> While driving an unmarked pickup truck in the area of Shirlington Circle, Owens received an alert from another officer of a suspicious four door Ford Taurus vehicle that matched the description of one of the reported stolen vehicles. Owens immediately went to Shirlington Circle and saw the suspicious vehicle, which had Pennsylvania temporary tags. Owens followed the vehicle around Shirlington Circle onto northbound Interstate 395. Owens saw the driver of the vehicle, later identified as appellant, make an illegal lane change from the right center lane into the left center lane without using his turn signal. Owens described appellant's action as "he initially merged on, he merged into the right center lane. He made a lane change without using his turn signal into my lane, directly, causing me to be affected." Because Owens did not have emergency equipment on his unmarked vehicle, he notified Detective Chris Dengeles, who was ahead of him on 395 in an unmarked vehicle, of what he had observed and asked Dengeles to make a traffic stop of appellant's vehicle for him.
>
> As appellant's vehicle came up behind Dengeles, it passed him rather quickly. Dengeles also noticed appellant did not signal when he changed lanes and that appellant was traveling faster than the posted speed limit of fifty-five miles per hour. Dengeles activated his emergency equipment and began to pull the vehicle over. Appellant began to slow but did not pull over and stop until they had passed two exits and traveled at least one-half mile. As appellant began to pull onto the

2

right shoulder, Dengeles pulled his vehicle in front of appellant's vehicle and Owens pulled his vehicle "right up along the back bumper of [appellant's] vehicle."

Owens immediately put on a black bulletproof vest with the word "Police" on it and an embroidered badge. Owens exited his vehicle and approached appellant's vehicle along the rear passenger side, as Dengeles approached the vehicle along the driver's side. Dengeles had his firearm drawn and pointed towards appellant from a distance of approximately ten to twelve feet. Owens immediately noticed that the ignition on appellant's vehicle was completely destroyed. The steering column was completely cracked open and there was no ignition where it should have been. At that point, Owens drew his firearm and alerted Dengeles that the ignition was missing.   Owens and Dengeles had their firearms drawn for officer safety. Dengeles at least twice ordered appellant to turn off the vehicle or he would shoot. At that time, appellant was in the driver's seat, Stephanie Ita, an adult, was in the front passenger seat, appellant's brother, Phillip Davis, was in the backseat behind the driver's seat, and appellant's six-year-old daughter was lying unsecured in the backseat, without a seatbelt or car seat.

Appellant indicated that he could not turn the vehicle off without a screwdriver, because the ignition was missing. Owens ordered the three adult occupants to exit the vehicle. Owens indicated they removed appellant while the engine was still running, because they did not want to give him the opportunity to arm himself with a screwdriver. Dengeles holstered his weapon just prior to removing appellant from the vehicle. Owens placed appellant and his brother in handcuffs, for officer safety, due to their investigating "a now-potential stolen car because of the missing ignition." After placing appellant and his brother in handcuffs, Owens immediately holstered his firearm. Sergeant Marc Allen Jenkins, Officer Brennan, and Corporal Whelan also arrived on the scene. Owens also noticed that the driver's side door lock was punched out and completely missing. Owens testified that based on his experience, a busted-out ignition and a busted-out driver's side door lock are common indicators that a vehicle is stolen.

When Sergeant Jenkins responded to the scene of the traffic stop, he saw appellant standing at the side of the road in handcuffs. After Jenkins arrived, Dengeles looked for appellant's registration in his glove compartment, at appellant's direction, and elsewhere in the vehicle, but did not find a registration. Jenkins spoke to Owens to determine what was going on with the stop. Then Jenkins told appellant he was not under arrest, but was being detained until they could run the VIN on the vehicle to make sure it was not stolen, due to the punched-out ignition and door lock. Appellant indicated he understood. Then Jenkins saw in plain view on the front seat on the passenger side a plastic container labeled as "parsley." He then stated to appellant, "I found something on the front seat that appears to me to be suspicious, big parsley flakes.... [M]ay I have permission to search your car?" With a calm demeanor, appellant said, "[Y]es." Jenkins never removed his weapon and never threatened appellant.

After appellant's daughter was removed from the vehicle, police searched the vehicle and eventually had Officer Harvey Snook sweep it with his narcotics canine. As a result, they located a .38 caliber revolver, a loaded .22 caliber revolver,

and an electronic scale that had white powder residue on it. They found those items under the back passenger seat where appellant's daughter had been. Next to the scale and the guns, police found temporary registration paperwork for the vehicle with appellant's signature. Snook testified that the seat on which appellant's daughter was lying was loose and that he just flipped the seat cushion to see the guns and the scale.

****

[T]he evidence established that appellant's six-year-old daughter was traveling in a vehicle, unsecured by a seatbelt or car seat. At that time, appellant possessed cocaine on his person with the intent to distribute. His daughter was lying on the backseat, under which there were two loaded handguns and an electronic scale with white residue, items commonly used in the drug trade. Snook testified that the seat on which appellant's daughter was lying was loose and that he only had to flip the seat cushion to see the guns. Moreover, while appellant was in possession of items used in the drug trade, including loaded weapons; he drove in such a manner as to cause the police to initiate a traffic stop of his vehicle. During that stop, due to appellant's failure to immediately pull over and his failure to turn off the vehicle's engine, police had their weapons drawn and pointed towards the vehicle for a period of time.

(*Id.* at 3–5, 7–8). On August 22, 2008, a judge of the court denied the petition for appeal. (*Id.* at 1–10). On November 24, 2008, a three-judge panel adopted the August 22, 2008 order and denied the appeal. (*Id.* at 11).

Mr. Davis, by counsel, filed a petition for appeal in the Virginia Supreme Court raising the same two assertions of error, as well as two additional assignments of error. The additional assignments of error challenged: (i) the Virginia Court of Appeals' application of Rule 5A:18, the contemporaneous objection rule, to a portion of his Fourth Amendment claim; and (ii) that court's failure to apply the good cause and ends of justice exception to the defaulted portion of his claim. In a summary order on April 30, 2009, the Virginia Supreme Court refused his petition for appeal. (Record No. 082502).

On November 22, 2006, Mr. Davis, proceeding *pro se*, filed his first state petition for a writ of habeas corpus in the trial court in which he raised the following claims:

a)  ineffective assistance of counsel

4

    b) jury not of my peers; petitioner complains that he had an all–white jury.

    c) ineffective assistance of counsel because counsel did not introduce evidence of citations which would have been helpful to the defendant's case.

    d) attorney advised witnesses not to show up for defendant's trial because he was 100% sure he would obtain a continuance.

On August 21, 2007, the trial court denied the petition. (Case No. CL07–412–00). On January 15, 2008, the Virginia Supreme Court dismissed the appeal because Mr. Davis had failed "to assign error as required by Rule 5:17(c)." (Record No. 072407).[3]

On March 28, 2008, Mr. Davis, proceeding *pro se*, filed his second state petition for a writ of habeas corpus in the Virginia Supreme Court. On April 28, 2008, the Virginia Supreme Court dismissed that petition because "no writ shall be granted on the basis of any allegation the facts of which the petitioner had knowledge at the time of filing any previous petition." (Record No. 080607, Hab. II at 3) (citing Va. Code § 8.0l–654(B)(2)).

Mr. Davis, proceeding *pro se*, filed his third state petition for a writ of habeas corpus in the circuit court, which was dated February 9, 2010. On September 26, 2011, the circuit court denied the petition. (Case No. CL10–415–00). On March 15, 2012, the Virginia Supreme Court dismissed Mr. Davis's petition for appeal, finding it failed "to comply with the requirements of

---

[3] In 2010, Rule 5:17(c) provided, in pertinent part, as follows:

    Form and Content. Under a separate heading entitled "Assignments of Error," the petition shall list the specific errors in the rulings below upon which the appellant intends to rely. Only errors assigned in the petition for appeal will be noticed by this Court. . . . An assignment of error, which merely states that the judgment or award is contrary to the law and the evidence, is not sufficient. If the petition for appeal does not contain assignments of error, the appeal will be dismissed.

*Escalante v. Watson*, 488 F. App'x 694, 698 (4th Cir. 2012) (discussing a 2007 conviction and an appeal dismissed in 2010); *see, e.g., Miles v. Johnson*, No. 3:10cv254, 2010 WL 4791820, at *2 (E.D. Va. Nov. 18, 2010).

5

Rule 5:17(c)(1)(iii) because it d[id] not list the specific error(s) in the lower court proceedings upon which the appellant intend[ed] to rely." (Record No. 112205) (Dkt. 17–3 at 25).

On October 10, 2013, Mr. Davis, proceeding *pro se*, filed an "Independent Action Motion to Set Aside Judgment by Default" ("Independent Action" or "Motion") in the circuit court, alleging that the Commonwealth's Attorney submitted perjured testimony to the trial court (fraud on the court). (Case No. CL13–2305).[4]   On March 4, 2022, the Motion was dismissed because Mr. Davis had "failed to state a claim" for relief.[5]   The Virginia Court of Appeals affirmed the dismissal. *Davis v. Commonwealth*, No. 0972-22-4, 2023 WL 138327, at *1 (Va. Ct. App. Jan. 10, 2023).[6]   The court summarized the claim stating it alleged that "the Commonwealth [had]

---

[4] Mr. Davis alleges several different dates as to when he filed his Motion. In his Memorandum, he alleges that he filed his Motion in June of 2012 (Dkt. 3 at 3); in his petition for appeal, he alleges he filed the Motion "[o]n or about June 10, 2013) (Record No. 230133, at 7); and in a letter, dated December 20, 2013, to the circuit court clerk, he alleged that he filed it "on October 14 & 15, 2013." Respondent alleges it was filed on February 27, 2014. (Dkt. 11 at 2). The record establishes that the Motion was sent to the Attorney General on October 10, 2013, and the clerk stamped it received on October 14, 2013. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding a petition is considered filed as of the date it was properly delivered to prison officials for mailing to the court). In as much as the record is not paginated, but appears to be in chronological order, the Court will refer to the relevant portion of the Motion's record by the date on the pleading, letter, or order.

[5] The roughly nine–year delay in the proceedings on the Motion resulted from Mr. Davis's failure to prosecute his case and his failure to notify the court of his change of address. A letter from the court dated February 14, 2014 informed Mr. Davis that no action had been taken on his Motion because he had not served the Virginia Attorney General. The record does not indicate anything else until a judicial assistant informed Mr. Davis and the Virginia Attorney General, by letter dated October 5, 2018, that the case had been deemed inactive because no proceedings had occurred or orders entered for a period of three years. The Respondent filed a motion to dismiss on November 19, 2019, and the Motion was dismissed on March 4, 2022. A letter dated July 10, 2019 indicates Mr. Davis's return address is the Federal Correctional Institute Berlin, P.O. Box 9000, Berlin, New Hampshire; the letter, however, did not draw the clerk's attention to the change in address. (Case No. CL13–2305). Mr. Davis did not expressly notify the state court that his address had changed until five months later in a letter dated December 30, 2019. This letter also informed the court that Mr. Davis was in federal custody.

[6] References to the record of the 2022 appeal to the Virginia Court of Appeals, *Nathan Davis v. Commonwealth*, Record No. 0912–07–4, will be designated "CAV at ___."

conspired with its witnesses to suborn perjured testimony and, thus, [had] prevented the court from performing its judicial duties." *Id.* at *2. The court found that the "facts set forth in Davis's pleading d[id] not sufficiently show that his criminal convictions were procured by extrinsic fraud," and summarized the Motion and proceedings. *Id.* at *3.[7]

> Davis's convictions arose out of an incident with the police that occurred on June 14, 2006, in which the car he was driving was the subject of a traffic stop that led to the seizure of drugs from Davis's person and weapons from the car. Davis later filed a motion to suppress, and the court conducted an evidentiary hearing on that motion. At the suppression hearing, Officer Matt Owens testified that he was on the lookout for "people driving stolen cars," when he observed a "suspicious vehicle" matching the description of one of the vehicles that was stolen. He testified to the same facts at trial. Although Officer Owens did not specify whether the information regarding a stolen vehicle came from this list in his testimony, Davis's counsel had—and took—every opportunity to cross-examine him about his patrol, the reasons for stopping Davis, and the subsequent investigation and arrest.

> Davis claims that, because the list of stolen vehicles from the Shirlington and Fairlington areas of Arlington County does not include a vehicle matching the description of the car he was driving, Officer Owens, with the Commonwealth's knowledge, lied about his reason for the stop. Davis concludes that the Commonwealth's failure to provide this list before the suppression hearing fraudulently led to the court's failure to suppress the evidence and ultimately led to his convictions. Davis's pleadings fail to show that Officer Owens knowingly and intentionally made a false representation of a material fact, relied upon by either Davis or the court, that resulted unlawfully in his criminal convictions. The evidence reflects the fact that Davis was never denied a trial or an opportunity to be heard. On the contrary, it shows that, even if Officer Owens had perjured himself, Davis was afforded every opportunity to ferret that out through cross-examination. Moreover, Officer Owens's summary states that the vehicle Davis was driving was, in fact, stolen out of Washington, D.C. It follows that the trial court did not err in dismissing his independent action for failure to state a claim.

*Id.* at *3.[8] Mr. Davis's *pro se* appeal to the Supreme Court of Virginia was refused on September 11, 2023. (IA Rec. at 48).

---

[7] The appellate record included: the exhibits to the Motion (CAV at 114–26); and the prosecution's discovery response, including the reports of Officer Owens, Sgt. Jenkins, Det. Dengeles, and the K–9 Activity Report, which was provided to Mr. Davis's trial counsel on or about July 13, 2006. (*Id.* at 213–19); (Dkt. 3–1 at 11–20).

[8] If Mr. Davis had prevailed, fraud upon the court was a basis to vacate is convictions. *See* Va. Code Ann. 8.01–428 (D). In Virginia, the elements of a fraud upon the court claim are as follows:

## II.   Federal Petition

On December 20, 2023, Mr. Davis, proceeding *pro se*, filed the instant petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254.  The petition is dated December 9, 2023, and raises

the following claims:

> I. Mr. Davis's Fourth, Fifth, and Fourteenth Amendment rights were violated by: "Prosecutorial misconduct where the prosecutor failed to disclose *Brady* evidence (i.e., The GLA Reports) or correct the perjured testimony concerning officers' allegations that their suspicions of Davis arose from their stolen car investigation." (Dkt. 3 at 15–23).

> II. Mr. Davis's Fourth, Fifth, Sixth and Fourteenth Amendment rights were violated because: "Counsel rendered ineffective assistance where he failed to object to the prosecutor's perjured testimony concerning the stolen car investigation and where he failed to impeach officers' credibility with the GLA reports." (*Id.* at 23–28).

> III. Mr. Davis's Fourth, Fifth and Fourteenth Amendment rights were violated by: "Prosecutorial misconduct where the prosecutor and the police officers lied and intentionally misrepresented the order and manner of the searches and seizures at the suppression hearing, at trial, and on appeal." (*Id.* at 28–34).

> IV. Mr. Davis's Fourth, Fifth, Sixth and Fourteenth Amendment rights were violated because: "Counsel rendered ineffective assistance where he failed to object to the prosecution's intentional lies and misrepresentations concerning the order and manner of the searches and seizures, and where he failed to impeach the officers with the police reports." (*Id.* at 34–38).

> V. Mr. Davis's Fourth, Fifth, Sixth, and Fourteenth Amendment rights were violated because: "Counsel rendered ineffective assistance where he failed to conduct a competent direct examination in that he failed to allow Davis to testify in his own defense in order to refute the facts alleged by the police officers." (*Id.* at 39–42).

---

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*Charles v. Precision Tune, Inc.*, 414 S.E.2d 831, 833 (Va. 1992).  As noted in his appeal, "[a] judgment procured by extrinsic fraud 'is void and subject to attack, direct or collateral, at any time.'" *Davis*, 2023 WL 138327, at *3 (emphasis omitted) (quoting *State Farm Mut. Auto. Ins. v. Remley*, 618 S.E.2d 316, 320 (Va. 2005)).

VI.  Mr. Davis's Fourth, Fifth, Sixth, and Fourteenth Amendment rights were violated because: "Counsel rendered ineffective assistance where he failed to provide that Davis have a full and fair opportunity to litigate his Fourth Amendment suppression issues and failed to properly preserve the issues for appeal." (*Id.* at 43–48).

VII.  Mr. Davis's Fifth, Sixth, and Fourteenth Amendment rights were violated because: "Counsel rendered ineffective assistance where he failed to call or compel Phillip Davis's attendance for trial to testify in Davis's defense." (*Id.* at 49–50).

VIII.  Mr. Davis's Fifth, Sixth, and Fourteenth Amendment rights were violated because: "Counsel rendered ineffective assistance where he alienated Davis during his inflammatory closing argument where he essentially told the jury that they and the police officers were all racists from the state of the confederacy, home of the lynching." (*Id.* at 50–51).

IX.  Mr. Davis's Fifth and Fourteenth Amendment rights were violated by: "Prosecutorial misconduct where the prosecutor admitted testimony that Davis was unemployed even though this statement was not disclosed in discovery and could not have been used to impeach Davis where Davis had not yet testified." (*Id.* at 52–54).

X.  Mr. Davis's Fifth, Sixth, and Fourteenth Amendment rights were violated because: "Counsel rendered ineffective assistance where he failed to object to the improper admission of the 'unemployed' statement where it was not disclosed prior to trial and, also, where it was improperly admitted as impeachment evidence even though Davis had not yet testified." (*Id.* at 54–59).

XI.  Mr. Davis's Fifth, Sixth, and Fourteenth Amendment rights were violated because: "The State violated Davis's right to confrontation and, in effect, failed to meet its burden of proof where the state admitted the drug analysis without calling the drug analyst to testify and be cross–examined." (*Id.* at 60–61).

XII.  Mr. Davis's Fifth, Sixth, and Fourteenth Amendment rights were violated because: "Counsel rendered ineffective assistance where he failed to object where the State failed to call the drug analyst to testify or be cross–examined and where the State failed to meet its burden of proving that Davis actually had drugs." (*Id.* at 62–63).

XIII.  Mr. Davis's Fourth, Fifth, Sixth and Fourteenth Amendment rights were violated because: "The cumulative effect of the prosecutorial misconduct violated Davis's right to due process and a fair trial." (*Id.* at 63).

XIV.  Mr. Davis's Fourth, Fifth, Sixth and Fourteenth Amendment rights were violated because: "The cumulative effect of the ineffectiveness of counsel violated Davis's rights to effective assistance of counsel, due process, and a fair trial." (*Id.* at 64).

XV.  Mr. Davis's Fourth, Fifth, and Fourteenth Amendment rights were violated because the "Commonwealth['s] Attorney committed fraud upon the court by conspiring with witnesses to present perjured testimony which prevented the court's ability to function and perform its judicial duties." (*Id.* at 65–68).

9

XVI. Mr. Davis's Fifth, Sixth, and Fourteenth Amendment rights were violated because the "State procedural default does not bar federal habeas court from hearing Davis's substantial claims of ineffective assistance of trial counsel." (*Id.* at 68–70).

### III.    Statute of Limitations

Under the Anti–terrorism Effective Death Penalty Act ("AEDPA"), a petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state–created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)–(D). To be properly filed, the petition must be delivered in compliance with the applicable laws and rules governing filings, including format and time requirements. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). The United States Supreme Court has emphasized that an untimely state petition is not properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005). Although Mr. Davis avers that his petition was timely filed, the records establish that his petition is untimely under § 2244(d)(1)(A).

Mr. Davis's convictions became final at the conclusion of his direct appeal on April 30, 2009. His federal statute of limitations began to run ninety days later on July 29, 2009.[9] Therefore, he had until July 29, 2010 to file his federal habeas petition. Mr. Davis, however, did not file his federal petition until December 9, 2023—more than fourteen years later. Accordingly, absent statutory or equitable tolling, his petition is barred as untimely.

*A. Statutory Tolling*

Under AEDPA, a state prisoner must file his petition for a writ of habeas corpus within one year of the completion of the state court direct review process. 28 U.S.C. § 2244(d)(1)(A). In

---

[9] Pursuant to Sup. Ct. R. 13(1), Mr. Davis had ninety days to file a petition for a writ of certiorari to the United States Supreme Court after the Virginia Supreme Court refused his direct appeal on April 30, 2009. He did not file petition for a writ of certiorari, which rendered his conviction final on July 29, 2009.

calculating the one–year period, the Court excludes the time during which any of the petitioner's properly filed state collateral proceedings were pending. *See* 28 U.S.C. § 2244(d)(2); *see also Pace*, 544 U.S. at 417 (the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts).

In this case, Mr. Davis's first and second state habeas petition proceedings concluded before the end of his direct appeal on April 30, 2009, and before the federal statute of limitations began to run on July 29, 2009.[10] Therefore, neither his first nor second state habeas petitions could have tolled the federal statute of limitations, which had not yet begun to run.

Mr. Davis's third state habeas petition was executed on February 9, 2010.  Between July 29, 2009 and February 9, 2010, 195 days of the statute of limitations elapsed. This passage of time left Mr. Davis 170 days to file his federal habeas petition after the tolling ended.  The third state habeas petition was denied on September 26, 2011.   While the state denial order discusses Virginia's successive writ statute, Virginia Code § 8.01–654(B)(2), it subsequently found that the "claims are without merit."  (Case No. CL10–415–00, Sept. 26, 2011 Order at 2–3) (hereinafter "Hab. III at __").  At the bottom of the order's second page, the court inserted a title, "The Petition is Barred by the Virginia Code § 8.01–654(b)(2)," but the text under that title merely notes that Mr. Davis had filed prior state habeas petitions.  Thereafter, the order expressly states that "[t]he petitioner's claims are without merit and are dismissed." *Id.* at 3.

The Court is aware that state courts "frequently provide alternative bases for rejecting a claim." *Woodfolk v. Maynard*, 857 F.3d 531, 545 (4th Cir. 2017).  A procedural default is not "waived when a state court reaches the merits of a federal claim as an alternative basis for

---

[10]  The appeal from the denial of his first state habeas petition was dismissed on January 15, 2008, (Record No. 072407); and the appeal from the denial of his second state habeas petition was refused on April 28, 2008.  (Record No. 08607).

dismissal." *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010).  In this instance, however, the "limited explanation" in the circuit court's denial order—that the "claims are without merit," (Hab. III at 2–3)—"render[s] its intent ambiguous" as to whether the third state habeas was deemed successive—*i.e.,* properly filed.  *Woolfolk*, 857 F.3d at 545.[11]  The order, however, is not ambiguous as to whether the circuit considered the merits of Mr. Davis's claims because it expressly addressed the merits of the claims finding that Mr. Davis's "claims are without merit." (Hab. III at 3).  Because of the ambiguous nature of the September 26, 2011 order as to whether the court also deemed the third habeas writ to be successive, the Court will toll the federal statute of limitations from February 9, 2010 through September 26, 2011. The Court will also assume for purposes of this motion that the statute of limitations ceased to be tolled after the denial of his third state habeas petition on September 26, 2011 because Mr. Davis failed to properly file his appeal from the September 26, 2011 order denying him relief.

As previously stated, the appeal from the September 26, 2011 order was dismissed on procedural grounds on March 15, 2012 due to Mr. Davis's failure to comply with Rule 5:17(c)(1)(iii).  (Record No. 112205).  *See supra* at 5.

> An improperly filed petition . . . does not qualify for tolling under § 2244 and the statute of limitations begins running from the date of the lower court's decision.  *Id.* (holding that filing of a notice of appeal does not toll the limitations period if the petitioner subsequently fails to file a petition of appeal with the Virginia Supreme Court); *Christian v. Baskerville*, 232 F. Supp. 2d 605, 607 (E.D. Va. 2001) (holding statute of limitations was not tolled because the petition for appeal was not properly

---

[11] *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v.* ]*Sykes*[, 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court *explicitly invokes a state procedural bar rule as a separate basis for decision*.  In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.") (emphasis added)).

filed because it did not include assignments of error as required by state court rules) (citing Va. Sup. Ct. R. 5:17(c)(1)(i)), *appeal dismissed*, 47 F. App'x 200 (4th Cir. 2001); *see also Escalante v. Watson*, 488 F. App'x 694, 697–98 (4th Cir. 2012) (relying on *Christian*'s logic to hold that petitions for appeal that failed to comply with Va. Sup. Ct. R. 5:17(c) do not toll the statute of limitations under § 2244(d)(2)).

*Lewis v. Clarke*, No. 1:20CV282 (CMH/JFA), 2020 WL 6139946, at *4 (E.D. Va. Oct. 19, 2020), *appeal dismissed*, 853 F. App'x 914 (2021). As there was no properly filed proceeding pending after September 26, 2011, the remaining 170 days expired on March 14, 2012. Even if the statute of limitations did not begin to run again until after the March 15, 2012 dismissal, the 170 remaining days of his federal statute of limitations would have run on September 4, 2012. The next potential civil action filed by Mr. Davis was his Independent Action on October 10, 2013—and that date is more than one year after September 4, 2012. Thus, Mr. Davis's federal habeas petition is untimely unless he establishes he is entitled to equitable tolling.

### B. Equitable Tolling

To qualify for equitable tolling, a petitioner must demonstrate that (1) he had been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way that prevented him from timely filing. *Pace*, 544 U.S. at 418. A petitioner asserting equitable tolling "'bears a strong burden to show specific facts'" that demonstrate fulfillment of both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)). "Equitable tolling is an exceedingly narrow window of relief." *Finch v. Miller*, 491 F.3d 424, 427–28 (8th Cir. 2007) (citation omitted). "Diligence" requires that a petitioner specify "'the steps he took in diligently pursuing his federal claim.'" *Yang v. Archuleta*, 525 F.3d 925, 928, 930 (10th Cir. 2008) (quoting *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998)). The extraordinary circumstance component requires a petitioner establish that the circumstance which prevented him from complying with a deadline must have been "an 'external obstacle' to timely

filing, *i.e.*, that 'the circumstances that caused [his] delay must have been beyond [his] control.'" *Menominee Indian Tribe of Wis. v. U.S.*, 577 U.S. 250, 256 (2016). Indeed, equitable tolling is available only in "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Green v. Johnson*, 515 F.3d 290, 304 (4th Cir. 2008). Lastly, a petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

Mr. Davis asserts his federal petition is timely because he filed his Independent Action "in 2012," and his "State § 2255 was denied by the Virginia Supreme Court on 3/15/2012." (Dkt. 1 at 13). As discussed above, the Independent Action was not filed until October 10, 2013, and the March 15, 2012 dismissal was for not complying with Rule 5:17(c)(1)(iii)—which means the appeal was not properly filed and there was no tolling after the circuit court denied his state habeas petition on September 26, 2011. *See supra* at 11–13. Mr. Davis's reliance on his Independent Action therefore is misplaced because the federal statute of limitations had expired well before he filed the Independent Action on October 10, 2013.

Mr. Davis characterizes himself as "diligent," stating that the delays in his Independent Action were not attributable to him because he "repeatedly made attempts to get and keep the ball rolling in his Independent Action throughout the ten years it took to get the Circuit Court of Arlington to hear it," and that the delay also constitutes an "extraordinary circumstance" that prevented him from "complying with the statute of limitations." (Dkt. 15 at 3). Mr. Davis's arguments fail not only because his Independent Action was filed after the federal statute of

14

limitations had already expired, but because miscalculation of the federal statute of limitations is, at best, ignorance—which is not an extraordinary circumstance that warrants equitable tolling. *See U.S. v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (*pro se* petitioner's ignorance and misconceptions about the operation of the statute of limitations do not justify equitable tolling because they are not extraordinary circumstances beyond his control); *U.S. v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) ("[A] petitioner's own ignorance or mistake does not warrant equitable tolling ...."); *Felder v. Johnson*, 204 F.3d 168, 172–73 (5th Cir. 2000) (ignorance of law and *pro se* status held insufficient to toll limitations period); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (equitable tolling not justified by fact that petitioner simply did not know about AEDPA time limitation); *Wakefield v. R.R. Ret. Bd.*, 131 F.3d 967, 970 (11th Cir. 1997) (neither a litigant's *pro se* status nor ignorance of the law normally warrants equitable tolling). The federal statute of limitations had expired more than a year before Mr. Davis filed his Independent Action. Therefore, any delay in the Independent Action proceedings was irrelevant to Mr. Davis calculating the statute of limitations, and obviously could not have prevented him from complying with the statute of limitations that had already expired.

Mr. Davis's lack of diligence is further demonstrated by his failure to simultaneously file a federal petition with his third state petition, or at least after the dismissal of his third state habeas petition on September 26, 2011. On September 26, 2011, it was arguable that the statute of limitations had not run since the order was not clear as to whether it was a procedural dismissal or ruling on the merits. *See supra* at 11–13. If he were diligent, Mr. Davis would have filed a protective § 2254 petition in federal court and sought to stay and abey the federal proceeding. These actions would have negated any concern or risk that his federal statute of limitations would lapse during the proceedings on the third state habeas petition due to a finding that his third petition

or his subsequent petition for appeal would be found not to have been "properly filed." *Pace*, 544 U.S. at 416 (holding that "[a] prisoner seeking state postconviction relief might avoid this predicament [of having his state litigation being found not "properly filed"]... by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.") (citing *Rhines v. Weber*, 544 U.S. 269, 278 (2005)); *see Hyman v. Keller,* No. 10-6652, 2011 WL 3489092, at \*10 (4th Cir. Aug. 10, 2011) (holding *Pace* "extended the *Rhines* rationale beyond mixed 2254 petitions."); *see also Dreyfuse v. Pszczokowski,* No. CV 3:16-06717, 2017 WL 478564, at \*12 (S.D.W. Va. Jan. 6, 2017) (noting Third, Fourth, Seventh, Ninth, and Tenth Circuits have extended *Rhines* stay and abey procedure to unmixed petitions), *report and recommendation adopted*, No. CV 3:16-06717, 2017 WL 758950 (S.D.W. Va. Feb. 27, 2017); *see, e.g., Freeman v. Page*, 208 F.3d 572, 577 (7th Cir. 2000) ("a prisoner who wants to pursue state relief while assuring an entitlement to federal relief can protect himself by filing in both courts. The federal action should be stayed while the state court decides what to do."). Here, the first fourteen claims in Mr. Davis's § 2254 petition are the same as the fourteen claims raised in his third state habeas petition. Mr. Davis, therefore, could have easily filed in federal court and sought to stay and abey the proceedings on the § 2254 petition while he was exhausting his claims in state court. *See supra* at 15. It is not diligence to file those same claims over thirteen years later in federal court.[12]

---

[12] The two additional claims raised in his federal petition, Claims XV and XVI, are not a basis for relief. Claim XV, his fraud upon the court/perjury claim by which he sought to establish a jurisdictional defect, did not allege a violation of federal law; it asserted a violation of state law, which the state courts found Mr. Davis had failed to prove. *See supra* at note 8 (discussing elements of extrinsic fraud in Virginia that, if established, would render a judgment "void and subject to attack, direct or collateral, at any time"). "A state prisoner is entitled to relief under § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Billotti v. Legursky*, 975 F.2d 113, 119 (4th Cir. 1992) (quoting *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). The Fourth Circuit has previously held that a habeas petitioner's allegation that

16

In addition, Mr. Davis implicitly acknowledges his § 2254 petition is untimely by arguing in his response to the motion to dismiss that his claims are "not time barred and unexhausted because *equitable tolling* and because of the absence of post–conviction lawyer at initial collateral proceeding." (Dkt. 15 at 1) (emphasis added). As discussed above, Mr. Davis has not established either the diligence or an extraordinary circumstance that would warrant equitable tolling. Further, Mr. Davis's attempt to expand *Martinez* in response to the Respondent's argument that all his federal claims are procedurally defaulted is without merit.

*Martinez* recognized a narrow exception for defaulted claims of ineffective assistance of counsel in a state, such as Virginia, where a prisoner is not allowed to raise an ineffective assistance of counsel claim on direct appeal. Specifically, *Martinez* holds that "a prisoner may establish cause for a default of an ineffective–assistance [of trial counsel] claim ... where the state courts did not appoint counsel in the initial–review collateral proceeding ... [or] where appointed counsel in the initial–review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*." 566 U.S. at 14.[13]   Here, however, the record

---

the state court lacked jurisdiction rested upon state law and therefore was not cognizable on federal habeas review. *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998). Thus, questions of state law that do not implicate federal rights are not cognizable on federal habeas review. *Billotti*, 975 F.2d at 119 (citing *Inge v. Procunier*, 758 F.2d 1010, 1014 (4th Cir. 1985)); *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state–court determinations on state–law questions); *see also Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors involved with state post–conviction proceedings are not cognizable on federal habeas review). Claim XV, to the extent it alleges use of perjured testimony as a violation of Mr. Davis's constitutional rights (rather than fraud upon the court), appears to be duplicative of Claim I, which alleges a constitutional claim of knowing use of perjured testimony. Claim I is untimely and defaulted due to the failure to perfect the petition for appeal.

In Claim XVI, Mr. Davis argues he has substantial claims of ineffective assistance of counsel that should be reviewed under the narrow exception in *Martinez v. Ryan*, 566 U.S. 1 (2012). As noted herein, this federal habeas is untimely and *Martinez* is not applicable. *See infra* at 17–18.

[13]   *See Davila v. Davis*, 582 U.S. 521, 529 (2017) (declining to extend the *Martinez* exception to defaulted claims of ineffective assistance of appellate counsel); *Hunton v. Sinclair*, 732 F.3d 1124,

establishes that Mr. Davis's federal habeas petition is untimely, and *Martinez* does not provide a

basis to avoid the federal statute of limitations. *See Lambrix v. Sec'y Fla. Dep't Corr.*, 756 F.3d

1246, 1249 (11th Cir. 2014) (citing *Chavez v. Sec'y Fla. Dep't Corr.*, 742 F.3d 940, 946–47 (11th

Cir. 2014)); *Wilson v. Perry*, No. 1:14-CV-576, 2014 WL 4685405, at *1 (M.D.N.C. Sept. 19,

2014) ("*Martinez*... addressed whether a procedural bar, rather than a time bar, should apply to an

ineffective assistance of counsel claim from a state habeas proceeding.  Thus, *Martinez* . . . [is]

inapplicable to the determination of untimeliness under the AEDPA one–year statute of

limitations."), *appeal dismissed*, 588 F. App'x 216 (4th Cir. 2014).

 Finally, as the Seventh Circuit has correctly observed,

> "importing *Martinez*'s framework into the equitable tolling context would greatly
> erode the statute of limitations," in that it would potentially enable both
> represented and unrepresented petitioners whose trial–counsel ineffectiveness
> claims had sufficient merit, and who had otherwise exercised reasonable diligence
> in pursuing those claims, to characterize mistakes with respect to the statute of
> limitations as "extraordinary." . . . "Equity does not require, and precedent does
> not permit, such an undermining of the congressionally enacted statute of
> limitations."

*Conner v. Reagle*, 82 F.4th 542, 553 (7th Cir. 2023) (quoting *Lombardo v. U.S.*, 860 F.3d 547,

559–60 (2017)).

 Moreover, the concepts of exhaustion and default are decidedly different than timeliness.

Exhaustion and default concern whether a substantive constitutional claim will be considered by a

federal district court, whereas timeliness involves a determination of whether some extraordinary

circumstance beyond a petitioner's control prevented him from filing his substantive claims in a

timely fashion.  Exhaustion and default are implicated in the first fifteen claims of the federal

petition, which are, for purposes of this motion discussion, constitutional claims.  Because Mr.

---

1126–27 (9th Cir. 2013) (refusing to extend *Martinez* to a *Brady* claim defaulted by state post–
conviction counsel).

Davis raised the first fourteen claims in his third state habeas petition and failed to raise Claim XV

in state habeas as a constitutional claim, all fifteen are simultaneously exhausted and defaulted

because he failed to properly file his petition for appeal from the denial of his third state habeas

(Claims I through XIV) or failed to raise the claim in state habeas (Claim XV). *Bassette v.

Thompson*, 915 F.2d 932, 936–37 (4th Cir. 1990) (an unexhausted claim that would be held to be

defaulted if the petitioner were to return to state court is deemed simultaneously exhausted and

defaulted for purposes of federal habeas review); *see supra* at note 12.[14]  Mr. Davis's perfunctory

assertion of *Martinez* as a constitutional claim evidences an unreasoned argument that fails to

appreciate the difference between a constitutional ruling and an equitable ruling. *Martinez*, 566

U.S. at 16.

---

[14] Merely presenting the claim does not satisfy exhaustion because a state prisoner does not "fairly present" a claim for exhaustion purposes if the claim is raised in "a procedural context in which its merits will not be considered." *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *see also Baker v. Corcoran*, 220 F.3d 276, 291 (4th Cir. 2000) ("The Supreme Court held that the exhaustion requirement is not satisfied when a claim is presented for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor.") (internal quotations omitted)).

Mr. Davis's Memorandum, (Dkt. 3), is a nearly verbatim copy of the first 168 paragraphs of the Memorandum (Claims I through XIV) he submitted in support of his third state habeas petition. Imbedded within the claims are allegations to the effect that they are not defaulted due to the alleged ineffectiveness of trial counsel. These attempts in state court and federal court do not provide a basis for equitable tolling. Indeed, they would also not establish a basis for cause in the federal habeas because Mr. Davis defaulted the alleged ineffective assistance of counsel claim in state court by not properly perfecting his appeal from the denial of relief by the state circuit court on his third state habeas petition. *Swisher v. True*, 325 F.3d 225, 231 (4th Cir. 2003) (to constitute cause to excuse a default, "[t]he requisite ineffective assistance [claim] . . . 'is *itself* an independent constitutional claim' subject to the requirement of exhaustion in state court and to the doctrine of procedural default.") (quoting *Edwards v. Carpenter*, 529 U.S. 446, 451, 453 (2000) (holding that ineffective assistance claims asserted as cause for procedural default of other claims are themselves subject to procedural default rule); *see, e.g., Justus v. Murray*, 897 F.2d 709, 714 (4th Cir. 1990) ("[B]efore an ineffective assistance of counsel claim may be raised as cause in federal habeas, it must first be exhausted in state court and not be procedurally defaulted."); *see also Murray v. Carrier*, 477 U.S. 478, 488–89 (1986) ("[T]he exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.").

In Claim XVI, Mr. Davis seeks to recast *Martinez* as a "constitutional ruling" by framing it with references to the Fifth, Sixth, and Fourteenth Amendments, rather than an "equitable ruling." *Martinez* itself rejected the characterization of its holding as a constitutional claim and expressly declared it was an equitable ruling. 566 U.S. at 16–17. As the Ninth Circuit noted, a finding of "'cause' to excuse a procedural default under *Martinez* is not a 'claim.'" *Detrich v. Ryan*, 740 F.3d 1237, 1247 (9th Cir. 2013). To be sure, *Martinez* held that "'[c]ause' . . . is not synonymous with 'a ground for relief,'" and "[a] finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." 566 U.S. at 17; *see Samples v. Ballard*, 860 F.3d 266, 275–76 (4th Cir. 2017) (holding that "a freestanding claim of ineffective assistance of state habeas counsel . . . is not a permissible avenue of relief in a federal habeas petition;" that *Martinez* did not create such a freestanding claim; and that "the district court did not abuse its discretion in not entertaining a claim that is statutorily barred") (discussing 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post–conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.")).

While a court might find "cause" via *Martinez* to excuse a default, such an equitable ruling does not create a "freestanding constitutional claim" that can be raised as a basis for relief. *Martinez*, 566 U.S. at 16; *see Lombardo v. U.S.*, 860 F.3d at 561 (declining "to recognize *Martinez's* framework as a means of establishing extraordinary circumstances for the purposes of equitable tolling"). Mr. Davis's federal habeas petition is untimely and *Martinez* is not a basis for equitable tolling. Accordingly, this petition is untimely.

**IV. Certificate of Appealability**

According to Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. 11(a), Rules Governing Section 2254 Cases U.S. District Courts; *see also* 28 U.S.C. § 2253(c)(1)(A) (prohibiting an appeal to the respective court of appeals from a final order concerning a habeas corpus petition "[u]nless a circuit justice or judge issues a certificate of appealability"). A certificate of appealability ("COA") will not issue absent "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Where a district court dismisses a petition solely based on procedural grounds, and does not address the underlying constitutional claims, *Slack* instructs the court to issue a COA only when the petitioner demonstrates that "jurists of reason" would find both the petition's "claim of the denial of a constitutional right" and the district court's dispositive procedural ruling "debatable[.]" *Id.* As to whether the procedural ruling is "debatable[,]" *Slack* further advises that when the procedural bar present is "plain" and "the district court is correct to invoke it to dispose of the case," "jurists of reason" could not find "that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.*

Here, Mr. Davis's petition will be dismissed because Mr. Davis failed to file his federal petition for a writ of habeas corpus within the one–year statute of limitations permitted under 28

U.S.C. § 2244(d)(1).  Where such "a plain procedural bar is present[,]" this Court finds that "jurists of reason" would not and could not "find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.  Thus, this Court will not issue a COA to Mr. Davis.

Mr. Davis may, however, seek a COA from the United States Court of Appeals for the Fourth Circuit.  Where a district court denies a COA, the petitioner "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  R. 11(a), Rules Governing Section 2254 Cases U.S. District Courts.

**V.   Conclusion**

For the foregoing reasons, Respondent's Motion to Dismiss (Dkt. 10, 17) will be granted, and the motion to expand the record (Dkt. 4) will be denied as moot.  An appropriate Order and judgment shall be issued.

Entered this 27th day of September, 2024.
Alexandria, Virginia

                                                               **Patricia Tolliver Giles**
                                                               **United States District Judge**